UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

31800 WICK ROAD HOLDINGS, LLC,

    Plaintiff,

v.

                                                             Case No. 10-13692

FUTURE LODGING-AIRPORT, INC.
and KAYS ZAIR,                               HON. GEORGE CARAM STEEH

    Defendants.

        -AND-

FUTURE LODGING-AIRPORT, INC.,

    Counter-Plaintiff/Third-Party Plaintiff

v.

31800 WICK ROAD HOLDINGS, LLC,

    Counter-Defendant,

        -AND-

BANK OF AMERICA AS TRUSTEE
FOR THE REGISTERED HOLDERS
OF LB-UBS COMMERCIAL MORTGAGE
TRUST 2006-c7, COMMERCIAL
MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2006-C7; and
CW CAPITAL ASSET MANAGEMENT LLC,

    Third-Party Defendants.
_____/

OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF/COUNTER-DEFENDANTS' MOTIONS
FOR PARTIAL SUMMARY JUDGMENT (#35 and #40)

On September 16, 2010, 31800 Wick Road Holdings, LLC ("Wick Road") filed a complaint in this court seeking to recover money allegedly owed by defendant Future Lodging - Airport, Inc. ("Borrower") under the terms of a promissory note in the principal amount of $2,650,000, to foreclose its mortgage lien on the real and personal property that constitute a 123-room hotel located in Romulus, Michigan, and to recover amounts allegedly owed to it by defendant Kays Zair under the terms of a Guaranty of Payment and a Guaranty of Recourse Obligations of Borrower.  On April 29, 2011, Wick Road moved for summary judgment on its mortgage foreclosure claim against Borrower and its guaranty of payment claim against Zair.  On June 27, 2011, Wick Road and the third-party defendants moved for summary judgment on the counterclaim/third-party complaint.  These motions have been fully briefed by the parties.  On September 1, 2011, the court held oral argument on the motions.  For the reasons set forth below, the court grants in part and denies in part Wick Road's motions for partial summary judgment.

BACKGROUND

On August 21, 2006, Borrower obtained a $2,650,000 commercial mortgage loan from Lehman Brothers Bank, FSB.  The loan is evidenced by a promissory note and is secured in part by a mortgage on the real and personal property that constitutes a 123-room hotel located at 31800 Wick Road in the city of Romulus, Michigan.  The description of the mortgaged property is set forth more specifically in the mortgage.

The mortgage requires Borrower to make payments on "the Debt at the time and in the manner provided in the Note."  (Mortgage, § 3.1.)  The debt is defined as:

> the aggregate of the indebtedness evidenced by the Note in lawful money

2

>of the United States of America, interest, default interest, late charges, prepayment premiums and other sums, as provided in the Note, this Security Instrument or the other Loan Documents..., all other moneys agreed or provided to be paid by Borrower in the Note, this Security Instrument or the other Loan Documents and all sums advanced pursuant to this Security Instrument to protect and preserve the Property and the lien and the security interest created hereby.

(Mortgage, § 2.1.) The note requires Borrower to make payments on the amounts due on the 11th day of each month. The mortgage includes, as an event of default, "if any portion of the Debt is not paid on the date the same is due or if the entire Debt is not paid on or before the Maturity Date..." (Mortgage, § 9.1.) Upon default, Wick Road may take certain actions, "which may be pursued concurrently or otherwise", including:

>(a) declare the entire unpaid Debt to be immediately due and payable; (b) with or without entry, institute proceedings, judicial or otherwise, for the complete or partial foreclosure of this Security Instrument under any applicable provision of law in which case the Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner...

(Mortgage, § 10.1.)

>The mortgage provides for the application of proceeds as follows:
>
>The purchase money, proceeds and avails of any disposition of the Property, or any part thereof, or any other sums collected by Lender pursuant to the Note, this Security Instrument or the other Loan Documents, may be applied by Lender to the payment of the Debt in such priority and proportions as Lender in its discretion shall deem proper.

(Mortgage, § 10.2.) The loan and loan documents were eventually assigned to Wick Road.

In connection with the loan, Zair executed a guaranty of payment and a guaranty of recourse obligations of Borrower. Under the guaranty of payment, Zair "absolutely, unconditionally and irrevocably" guaranteed payment of the debt. The guaranty also

3

entitles Wick Road to proceed "directly and at once, without notice" against Zair to collect and recover the full amount of his liability "without proceeding against Borrower...or foreclosing upon, selling, or otherwise disposing of" the mortgaged property. (Guaranty, § 9.) The guaranty also contains the following provision:

> Notwithstanding anything [to] the contrary contained herein, Guarantor's maximum liability under this Guaranty shall be limited to the sum which is (i) twenty five percent (25%) of the unpaid principal balance of the Loan (the "Guaranteed Principal Amount"), (ii) interest on the Guaranteed Principal Amount at the Default Rate prevailing from time to time under the Note and (iii) amounts payable by Guarantor under Section 4 hereof.

(Guaranty, § 18.) Section 4 requires Zair to reimburse Wick Road "for all expenses (including reasonable counsel fees and disbursements) incurred by Lender in connection with the collection of the Guaranteed Obligations or any portion thereof or with the enforcement of this Guaranty." (Guaranty, § 4.) The guaranty also provides "[a]ll moneys available to Lender for application in payment or reduction of the Debt may be applied by Lender in such manner and in such amounts and at such time or times and in such order and priority as Lender may elect in its sole discretion." (Guaranty, § 5.)

The mortgage contains provisions related to a "Replacement Reserve and Leasing Reserve" whereby Borrower was required to make deposits to be placed into a replacement reserve escrow account and Wick Road was required to make disbursements from the account to reimburse Borrower for certain costs incurred. The agreement provides:

> Each request for disbursement from the Reserve shall be in a form specified or approved by Lender, and shall be accompanied by evidence of the full performance of the obligations of the leasing agent or satisfactory completion of the Work or payment for FFE Replacements, as

>  the case may be, and such bills, invoices and other evidence of the incurrence of the related costs and expenses as Lender may reasonably request.

(Exhibit B to Mortgage, § 3(d).)

Zair attests that from 2006 to the end of 2009, the lender routinely allowed Borrower to assign disbursements from the reserve escrow account to the lender in lieu of making a monthly payment on the loan.  From the payment history sheet for January 1, 2009 through May 13, 2010, it appears installment payments were made from the reserve account for the April 11, 2009 and August 11, 2009 payments.

At the beginning of December 2009, Borrower submitted a reserve escrow disbursement request in the amount of $39,670.56 and requested the lender utilize the funds to satisfy Borrower's monthly payment obligation.  The lender requested Borrower make the payment directly.  Zair represents the following month he submitted another request and again requested that the lender use the funds to satisfy Borrower's monthly payment obligation.  The lender again requested Borrower make the payment directly.  Borrower and Zair assert Wick Road has refused to honor the disbursement requests or to release funds held in escrow.  Wick Road claims the December 2009 and January 2010 requests were not properly supported with proof that the purported purchases actually occurred.

Eventually, Borrower claims, it was unable to continue to meet its various obligations, including obligations to Choice Hotels, the franchisor.  Choice Hotels has sent numerous notices of default.  Borrower claims these defaults were caused by Wick Road's withholding of the reserve funds which caused cash flow problems.  A receiver was eventually appointed.

Wick Road alleges Borrower failed to make timely payments since January 11, 2009 and failed to make any payments since August 23, 2010 and thus has breached the terms of the agreements. Wick Road also alleges Borrower breached the agreements by: failing to comply with reporting obligations; failing to comply with access obligations; failing to maintain adequate capital; and failing to deliver documents received under the franchise agreement or management agreement. Wick Road also argues the terms of the mortgage do not allow the use of the reserve escrow account funds as a substitute for Borrower's monthly payment.

Borrower filed a counterclaim and third-party claims against Wick Road and its related entities. In the counterclaim/third-party complaint, Future Lodging asserts claims for breach of contract, tortious interference with Future Lodging's relationship with Choice Hotels, and conversion of the reserve escrow account funds. In its breach of contract claim, Future Lodging asserts violations of the covenant of good faith and fair dealing, failing to grant and apply disbursements from the mortgage's reserve account to Future Lodging's monthly mortgage payment, failing to pay taxes and insurance, and accelerating the indebtedness in bad faith. The tortious interference claim is based on Wick Road's alleged withholding of disbursements and failing to timely pay insurance and taxes.

On April 29, 2011, Wick Road moved for summary judgment on its mortgage foreclosure claim against Borrower and its guaranty of payment claim against Zair. Wick Road alleges Borrower owes $3,228,760.18 as of April 11, 2011, which includes interest and fees. In response, defendants argue: (1) a judgment of foreclosure should not enter until after the Borrower's right to setoff and the amount of setoff is determined;

(2) the guaranty claim also requires an adjudication of the amount of debt; and (3) defendants' obligations should be discharged because Wick Road's actions have frustrated the purpose of the agreements.

On June 27, 2011, Wick Road and the third-party defendants (collectively, the "counter-defendants") moved for summary judgment on the counterclaim and third-party complaint.

STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment forthwith if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice.  The procedure is not a disfavored procedural shortcut.  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).  The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "[T]he mere existence of *some* alleged factual dispute between the

parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48 (emphasis in original).

ANALYSIS

Wick Road's Claims

### Judicial Foreclosure

Under Michigan law, promissory notes, mortgages, and guaranties are to be construed as ordinary contracts. See Collateral Liquidation, Inc. v. Renshaw, 301 Mich. 437, 443 (1942) (promissory notes); First Nat'l Bank of Ypsilanti v. Redford Chevrolet Co., 270 Mich. 116, 121 (1935) (contracts of guaranty); Knoll v. Chemical Bank, 2011 WL 711455, *2 (Mich. App. Mar. 1, 2011) (mortgages). When contract terms are unambiguous, the contract is to be enforced as written and the construction is a question of law. Quality Products & Concepts Co. v. Nagel Precision, Inc., 469 Mich. 362, 375 (2003).

Wick Road argues it is entitled to judicial foreclosure under the terms of the mortgage because Borrower defaulted by failing to make its monthly payments. Borrower admitted in court that it had not made payments since August 23, 2011. Wick Road accelerated the maturity of the Debt in a letter dated March 15, 2010, citing alleged defaults. Wick Road asserts the amount owed, as of April 11, 2011, including interest charges, is $3,228,760.18. Wick Road withdrew its request for judgment on the attorneys fees issue.

First, Borrower argues the debt owed under the mortgage should be reduced by the damages it believes it is entitled to as a result of its counterclaim. Wick Road

argues Borrower waived its right to assert a setoff, defense or counterclaim. Under Michigan law, "waiver may be shown by express declarations or by declarations that manifest the parties' intent and purpose." Sweebe v. Sweebe, 474 Mich. 151, 157 (2006). "There is no magic language that must be included to effectively waive" a right; "a waiver must simply be explicit, voluntary, and made in good faith." Id.; see also Comerica Bank v. Cohen, 291 Mich. App. 40, 48-49 (holding the unconditional nature of defendant's guaranty obligation was evident from the reading of the parties' agreement as a whole). Wick Road argues Borrower waived its rights under Section 11 of the note, which provides "all payments required hereunder shall be made irrespective of, and without any deduction for, any setoff, defense or counterclaim." Borrower has admitted that no payments have been made since August 23, 2011 and therefore is clearly in violation of the provisions of the mortgage requiring payment without a right to setoff.

Second, Borrower argues Wick Road has not proven that a debt exists and the amount of the debt. Before receiving a judgment of foreclosure, the mortgagee must prove that the debt exists and the amount of the debt. Collateral Liquidation, Inc. v. Lippman, 273 Mich. 586, 587-88 (1935). Borrower notes the amount asserted by Wick Road includes a $5,000 appraisal fee, a $4,300 environmental report, and a $10,222.04 operating advance. Wick Road provides evidence of these amounts through an affidavit and documents attached to its reply brief. Borrower also objected to the attorneys fees included in Wick Road's request, however Wick Road withdrew its request for summary judgment on the attorneys fees issue in its reply brief. The court finds Wick Road has sufficiently shown that a debt exists and the amount of the debt.

Third, Borrower argues Wick Road breached the agreements by frustrating the

purpose of the agreements and therefore Borrower is released from its contractual obligations. Borrower cites City of Flint v. Chrisdom Properties, Ltd., 283 Mich. App. 494, 499 (2009), a case in which the court found frustration of purpose in a mortgage situation when the mortgagor unjustifiably delayed the issuance of a building permit for more than a year after the Board of Appeals found the building in compliance. The court found the city's actions frustrated the defendant's ability to pay the mortgage and exercised its equitable powers to void the mortgage. The frustration of purpose doctrine does not apply here. Under the terms of the agreements, Borrower was not entitled to setoff its mortgage payments with funds allegedly due from the reserve escrow account. In addition, as discussed below, it appears reasonable for Wick Road to have requested "evidence of payment" for the reimbursement requests as allowed under the agreement. In City of Flint, the court found the mortgagor unjustifiably delayed the issuance of the permit for more than a year. The present case is not comparable. Therefore, Borrower's argument that Wick Road frustrated the purpose of the agreements by not releasing the escrow account funds fails. Wick Road is entitled to summary judgment on its judicial foreclosure claim.

### Guaranty of Payment Claim

In the guaranty, Zair "absolutely, unconditionally and irrevocably" promised to pay 25% of the unpaid principal balance due on the loan plus interest and expenses in connection with the lender's enforcement of the obligations. Section 9 of the guaranty gives Wick Road permission to proceed against Zair to recover the amount without first proceeding against Borrower or foreclosing on the property. Wick Road seeks $616,343.71 (25% of $2,461,374.82) plus interest accruing since March 22, 2010, the

deadline set by Wick Road in its March 15, 2010 demand letter.

Borrower asserts the amount due under the guaranty is subject to defenses and setoff and therefore cannot be determined yet. Wick Road argues Zair, like Borrower, waived his right to assert a setoff, defense or counterclaim. Section 1 of the guaranty adopts the payment provisions set forth in the loan documents and thus adopts the limitation in Section 11 of the note, which provides "all payments required hereunder shall be made irrespective of, and without any deduction for, any setoff, defense or counterclaim." Wick Road argues Section 2 of the guaranty also supports waiver as it shows the expansive nature of Zair's payment obligation. In Section 2, Zair agreed his payment obligation would be "absolute under any and all circumstances, without regard to the validity or enforceability of the Note, the [mortgage] or the other Loan Documents."

Borrower argues the amount due under the note cannot be established until after the foreclosure sale because the proceeds of the sale should be applied to the debt. See MCL 600.3135 ("The proceeds of every sale under a judgment shall be applied to the discharge of the debt adjudged by the court to be due and of the costs awarded.") As Zair guaranteed payment of the "debt", and the debt will necessarily be reduced by the proceeds of the foreclosure sale, Borrower argues a judgment on the guaranty should not yet issue.

Wick Road responds by noting Michigan law permitting a lender to proceed against a guarantor to collect and recover the full amount of the liability without first proceeding to collect the indebtedness from the borrower or filing any claim against the borrower. In Krekel v. Thomasma, 255 Mich. 283, 288-89 (1931), the court did not

require the creditor to first attempt to collect from the borrower before proceeding against the guarantor, when a party guaranteed absolute payment. See also Comerica Bank, 291 Mich. App. at 49 (finding "by the plain language of the guaranty, defendant unconditionally and absolutely agreed to pay 30 percent of the indebtedness and plaintiff was not required to foreclose on the real estate or proceed against other collateral before seeking payment from defendant.")  Here, Zair signed an absolute guarantee of payment and Wick Road is entitled to proceed against Zair without having to first collect the indebtedness from the Borrower.  However, Wick Road elected to pursue judicial foreclosure.  The court finds Zair liable on the guaranty but declines to address the amount of the judgment to be entered against Zair until after the foreclosure.

Counterclaims/Third-Party Claims

    Breach of Contract

As discussed above, under Michigan law, promissory notes, mortgages, and guaranties are construed as ordinary contracts.  See Collateral Liquidation, Inc., 301 Mich. at 443; First Nat'l Bank of Ypsilanti, 270 Mich. at 121; Knoll, 2011 WL 711455 at *2.  When contract terms are unambiguous, the contract is to be enforced as written and the construction is a question of law.  Quality Products & Concepts Co., 469 Mich. at 375.  Under the statute of frauds, only written promises are enforceable against a financial institution.  See MCL 566.132(2).  This includes a promise "to waive a provision of a loan...or other financial accommodation."  Id.

The loan documents provide that a request for reimbursement from the escrow account "shall be in a form specified or approved by Lender, and shall be accompanied

by evidence of the full performance of the obligations of the leasing agent or satisfactory completion of the Work or payment for FFE Replacements." Wick Road argues Borrower did not provide documentation supporting its December and January requests and the requests were therefore denied.

Borrower argues the reimbursement provision is ambiguous and thus the court should look to extrinsic evidence to resolve the ambiguity. Borrower asserts there is a latent ambiguity in the agreement as to the form in which the request must be submitted and thus the court should consider Wick Road's acceptance of prior requests in substantially the same form. The court disagrees. The provision requiring that the request "shall be accompanied by evidence of...payment for FFE Replacements" is unambiguous and should be enforced as written.

Borrower also states the agreement "is ambiguous regarding the specific mechanisms for handling the Reserve Account" and thus Wick Road's application of prior disbursements to installment payments should be considered to resolve the ambiguity regarding how payments can be paid out.

Alternatively, Borrower argues the established course of conduct amended the agreement and required Wick Road to accept the disbursement requests provided. Borrower cites Zair's testimony that Wick Road had accepted requests in substantially the same form in the past. Wick Road argues the statute of frauds prohibits such a modification because such a modification would constitute a "financial accommodation." Borrower argues the modification would not expose Wick Road to risk of loss and therefore is not a "financial accommodation" under the statute. See Schering-Plough Healthcare Products, Inc. v. NBD Bank, N.A., 98 F.3d 904, 909 (6th Cir. 1996) (finding

13

an action constitutes a "financial accommodation" when it exposes the financial institution to a risk of loss). However, because Wick Road would be entitled to apply the reserve escrow account funds to the debt upon Borrower's default, disbursements from the account would expose Wick Road to a risk of loss in that it would reduce the security for the loan.

Finally, Borrower argues it submitted sufficient evidence that the invoices referenced in the December and January requests had been paid. Both requests contain signed statements that the amounts included in the requests had been paid. However, the representations were not notarized even though the form used included a notary section. In addition, deposition testimony showed that the check number cited in a request was not actually used for the purpose stated. Borrower has not come forward with additional evidence in support of its requests, such as a canceled check, credit card statement, or other proof of payment. Borrower therefore fails to submit sufficient evidence to create a genuine issue of material fact.

With regard to Borrower's claim that Wick Road breached the contract by failing to make insurance and tax payments, Wick Road argues Borrower has produced no evidence in support of its claim, is unable to show any damage caused by the alleged breaches, and indeed did not include any such amounts in its Rule 26(a)(1) disclosures. Borrower's failure to respond to this argument signals its acquiescence.

With regard to the alleged breach of the duty of good faith and fair dealing, Wick Road argues no such duty exists under the circumstances. Michigan law recognizes a claim for breach of the implied covenant of good faith and fair dealing when a contract leaves the manner of one party's performance to that party's own discretion. McLiechy

14

v. Bristol West Ins. Co., 408 F. Supp. 2d 516, 522 (W.D. Mich. 2006), citing Ferrell v. Vic Tanny Int'l Inc., 137 Mich. App. 238, 243 (1984).  Wick Road argues the obligations Borrower cites in support of its claim (failure to grant reimbursement and apply to monthly payment obligation and failure to pay taxes) are not discretionary and therefore its good faith and fair dealing claim based on such obligations must fail.  Borrower argues the form of the reimbursement request and the extent of the evidence required was within Wick Road's discretion.  The agreement provides that the reimbursement request "shall be in a form specified or approved by Lender" and that the request shall be accompanied by "such bills, invoices and other evidence of the incurrence of the related costs and expenses as Lender may reasonably request."  As Wick Road argues, even if there is discretion regarding the form and documentation that Wick Road could request, the agreement clearly requires that the disbursement request be accompanied by proof of payment.  Moreover, the court agrees with Wick Road that requesting a canceled check or other proof of payment before issuing the disbursement would not constitute a breach of the duty of good faith and fair dealing.  The counter-defendants are therefore entitled to summary judgment on Borrower's breach of contract counterclaim.

    Tortious Interference

Borrower asserts a claim for tortious interference with its contract with Choice Hotels.  Tortious interference requires an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the plaintiff.  Badiee v. Brighton Area Schools, 265 Mich. App. 343, 365 (2005).  Counter-defendants argue the claim should be dismissed because

Borrower has not shown a breach or termination of the relationship with Choice Hotels and because Borrower has not been harmed.  Borrower claims Choice Hotels has served numerous notices of default and notices of termination of the contract.  However, as counter-defendants note in their reply, Choice Hotels rescinded the July 8, 2011 notice of termination on July 11, 2011.  Thus, Borrower's contract with Choice Hotels remains intact.  The counter-defendants are therefore entitled to summary judgment on the tortious interference claim.

<u>Conversion</u>

Counter-defendants argue they have the right to use the reserve escrow account funds to satisfy Borrower's indebtedness under the section of the mortgage providing "any other sums collected by Lender pursuant to the Note, this Security Instrument or the other Loan Documents, may be applied by Lender to the payment of the Debt in such priority and proportions as Lender in its discretion shall deem proper."  (Mortgage, § 10.2.)  They also cite a section providing that, upon default, a lender may take actions to collect the debt and that the cost and expense of doing so, with interest, shall constitute a portion of the debt.  (Mortgage, § 10.3.)  On July 23, 2010, Wick Road sent Borrower a letter indicating its intent to use the reserve account funds to pay its costs.  Borrower is currently in default.  As the terms of the mortgage allow Wick Road to apply sums collected as a result of the loan documents as they wish, Borrower lacks a conversion claim.

<u>CONCLUSION</u>

For the reasons set forth above, Wick Road's motions for partial summary judgment are GRANTED in part and DENIED in part as follows: (1) the request for

summary judgment on the judicial foreclosure claim is GRANTED; (2) the request for summary judgment on the guaranty of payment claim against Zair is GRANTED with respect to liability and DENIED with respect to the amount requested; and (3) the request for summary judgment on the counterclaims is GRANTED.

SO ORDERED.

Dated: January 30, 2012

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on January 30, 2012, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk